DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD,<br><br>    Plaintiff,<br><br>    v.<br><br>VIRGIN ISLANDS CASINO CONTROL COMMISSION<br><br>    and<br><br>GOVERNMENT OF THE VIRGIN ISLANDS,<br><br>    Defendants. | Case No. |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff National Labor Relations Board, an agency of the United States government, by its undersigned attorneys, and in support of this Complaint against the above-named defendants for declaratory relief, alleges as follows:

**NATURE OF THE ACTION**

1. This action is brought on behalf of the National Labor Relations Board to declare unlawful certain policy and regulatory actions undertaken under the auspices of Virgin Islands territorial law, specifically the Virgin Islands Casino and Resort Control Act of 1995, 32 V.I.C. § 401, *et seq.* (the "Casino Act"). The policy and actions described below are inconsistent with federal law, and in excess of the authority granted

1

by Congress in the Revised Organic Act of the Virgin Islands of 1954, 48 U.S.C. §§ 1541,1574(a) (the "Organic Act").

2. Plaintiff seeks a declaratory judgment pursuant to the judicial power granted to this Court by 48 U.S.C. § 1611, as well as by 28 U.S.C. §§ 2201-2202, pursuant to Rule 57 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Territorial Clause of the United States Constitution (Article IV, Clause 3) and federal statutes, specifically the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, as amended (the "NLRA"), and the Organic Act. This Court also has jurisdiction pursuant to 28 U.S.C. § 1337 because the NLRA is an act of Congress regulating commerce. Title 48 U.S.C. § 1612 provides this Court with jurisdiction of a United States District Court. This Court has jurisdiction over defendants because each maintains an office within this judicial district.

4. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the events leading to the Board's claims occurred on the island of St. Croix.

## PARTIES

5. The National Labor Relations Board ("Board") is an independent agency of the United States, created by Congress and charged with the enforcement of the NLRA, the statute generally governing private sector labor relations in the United States and its territories. *See* 29 U.S.C. § 153. The Board's members and its General Counsel maintain offices in Washington, District of Columbia, and the Board maintains a regional

2

office in Tampa, Florida, that is responsible for enforcement of the NLRA within the territory of the U.S. Virgin Islands.

6. The Government of the Virgin Islands is a territorial government authorized by Congress in the Organic Act and, by its Department of Justice, Division of Gaming Enforcement, is responsible for administrative, civil, and criminal enforcement of the Casino Act. *See* 32 V.I.C. §§ 409, 428-29. The Virgin Islands Department of Justice offices are located at 34-38 Kronprindsens Gade, GERS Building, 2nd Floor, St. Thomas, U.S. Virgin Islands.

7. The Virgin Islands Casino Control Commission (the "Commission") is an agency of the Government of the Virgin Islands created by the Casino Act. *See* 32 V.I.C. § 404. The Commission is responsible for, among other things, regulating the gaming industry within the U.S. Virgin Islands. *See* 32 V.I.C. § 415. The Chairperson and members of the Commission maintain offices at 5 Orange Grove, Christiansted, St. Croix, U.S. Virgin Islands.

## LEGAL BACKGROUND

### *a) U.S. Constitution*

8. Pursuant to the Territorial Clause of the Constitution, the Government of the Virgin Islands and its agencies may only exercise legislative powers conferred by Congress. *See* U.S. Const. art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States.").

### b)  Organic Act

9. In the Organic Act, Congress provided, in relevant part, that "[t]he legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with this chapter or the laws of the United States made applicable to the Virgin Islands . . . ." 48 U.S.C. § 1574(a).

### c)  Casino Act

10. Pursuant to its congressionally-granted legislative authority, the Legislature of the Virgin Islands enacted the Casino Act, which permits and regulates the gaming industry in the Virgin Islands and establishes the Commission to administer the statute. *See* 32 V.I.C. §§ 401, 404.

11. The Casino Act regulates labor organizations in the gaming industry in the Virgin Islands, and states in relevant part:

> (a) Each labor organization, union or affiliate seeking to represent employees licensed or registered under this chapter and employed by a casino hotel or a casino licensee shall register with the Commission annually . . .
>
> (d) Any person, including any labor organization, union or affiliate, who shall violate, aid and abet the violation, or conspire or attempt to violate this section is guilty of a felony.
>
> (e) The Commission . . . may maintain a civil action and proceed in a summary manner, without posting bond, against any person, including any labor organization, union or affiliate, to compel compliance with this section, or to prevent any violations, the aiding and abetting thereof, or any attempt or conspiracy to violate this section.

32 V.I.C. § 445(a), (d), (e).

### d)  National Labor Relations Act

12. The NLRA is the federal law generally governing relations among private sector employers, employees, and labor organizations. *See* 29 U.S.C. §§ 151-157.

13. Section 10 of the NLRA, 29 U.S.C. § 160, empowers the Board "to prevent any person from engaging in unfair labor practices [as further defined in Section 8 of the statute] affecting commerce." Section 2(6) of the NLRA, 29 U.S.C. § 152(6), defines commerce to include commerce with United States territories. The NLRA is thus a law of the United States made applicable to the Virgin Islands.

14. Section 7 of the NLRA, 29 U.S.C. § 157, provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ."

15. The Board effectuates the statutory policies of the NLRA primarily through two types of proceedings—unfair labor practice proceedings and representation proceedings. With respect to the former, the NLRB is vested with the exclusive authority to investigate, adjudicate at hearing, and remedy unfair labor practices under Section 10 of the NLRA, 29 U.S.C. § 160. As to the latter, the agency conducts secret-ballot elections and related proceedings pursuant to Section 9 of the NLRA, 29 U.S.C. § 159, which vests the Board with the sole power to determine if a union should be certified to represent certain employees for the purposes of collective bargaining.

16. Upon certification by the Board pursuant to Section 9(a) of the NLRA, 29 U.S.C. § 159(a), a union becomes the exclusive bargaining representative of a defined unit of employees in relation to those employees' terms and conditions of employment.

17. Section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), provides that it is an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in Section 7 of the Act.

18. Section 8(b)(1)(A) of the NLRA, 29 U.S.C. § 158(b)(1)(A), provides that it is an unfair labor practice for a labor organization to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in Section 7 of the Act, which includes failing to fairly represent all employees on whose behalf the labor organization bargains collectively. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

19. Section 8(d) of the NLRA, 29 U.S.C. § 158(d), imposes a "mutual obligation of the employer and the [union] representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder . . . ."

20. Section 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5), provides that an employer's refusal to bargain collectively (as defined in Section 8(d)) is an unfair labor practice.

21. Section 8(b)(3) of the NLRA, 29 U.S.C. § 158(b)(3), provides that a union's refusal to bargain collectively (as defined in Section 8(d)) is an unfair labor practice.

22. Section 11 of the NLRA, 29 U.S.C. § 161, provides that "[f]or the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it [under Sections 9 and 10 of the NLRA] . . . [a]ny member of the Board, or any agent or agency designated by the Board

for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence."

23. Section 12 of the NLRA, 29 U.S.C. § 162, provides that it is unlawful for any person to "resist, prevent, impede, or interfere with any member of the Board or any of its agents or agencies in the performance of duties" under the NLRA.

## FACTS

24. Grape Tree Shores d/b/a Divi Carina Bay Resorts ("Divi Carina"), a U.S. Virgin Islands corporation, operates a hotel located at 5025 Turner Hole Road in Christiansted.

25. Divi Carina is an employer within the meaning of Section 2(2), (6), and (7) of the NLRA, 29 U.S.C. § 152(2), (6), and (7).

26. The Virgin Islands Workers Union Local 611 (the "Union") is a labor organization within the meaning of Section 2(5) of the NLRA, 29 U.S.C. § 152(5).

27. Following a secret-ballot election conducted by the Board, on August 18, 2008, the Board certified the Union as the exclusive collective-bargaining representative of Divi Carina's hotel employees (the "Hotel Unit") for the purposes of collective bargaining pursuant to Section 9(a) of the NLRA, 29 U.S.C. § 159(a).

28. On January 14, 2009, the Union filed an unfair labor practice charge with the Board alleging that Divi Carina had refused to bargain with the Union in violation of Section 8(a)(1) and (5) of the NLRA, 29 U.S.C. § 158(a)(1) and (5).

29. On December 29, 2010, the Board, on a motion for summary judgment filed by its General Counsel, issued a Decision and Order finding that Divi Carina

violated Section 8(a)(1) and (5) of the NLRA by failing and refusing to bargain with the Union. *Grapetree Shores, Inc. d/b/a Divi Carina Bay Resort*, 356 NLRB 273, 274 (2010).

30. As a remedy for its unlawful conduct, the Board ordered Divi Carina to bargain with the Union at its request, and to cease and desist from refusing to recognize and bargain with the Union or "[i]n any like or related manner [from] interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by . . . the [NLRA]."

31. On November 16, 2011, the United States Court of Appeals for the Third Circuit entered its Judgment enforcing the Board's December 29, 2010 order in full. *NLRB v. Grapetree Shores, Inc.*, 451 Fed. App'x 143 (3d Cir. 2011).

32. Following entry of the Third Circuit's Judgment, Divi Carina and the Union first met to negotiate on April 30, 2012. However, the parties did not make substantial progress in negotiations, meeting only twice that year, on or about April 30, 2012, and on or about September 25, 2012.

33. By email dated December 12, 2012, Divi Carina informed the Union it could not bargain until the Union had registered with the Commission. In its email, Divi Carina stated a concern that continued bargaining could lead to its own criminal liability for aiding and abetting the Union's failure to register with the Commission under the Casino Act. Divi Carina sent a copy of this letter to the Commission.

34. By email to the Union and counsel for Divi Carina dated December 19, 2012 (attached as Exhibit A), the Commission, by Chairperson Violet Anne Golden, issued an order stating that the Union was not in compliance with the Casino Act's registration requirement and ordered that "all parties shall refrain from any activity that

violates 32 V.I.C. § 445(a) through (g) until the [Union] complies with the registration requirements under the law."

35.	On January 17, 2013, the Union filed an unfair labor practice charge with the Board's Tampa Office against Divi Carina (NLRB Case No. 24-CA-096579). In its charge, the Union alleged that Divi Carina had unlawfully conditioned collective bargaining on the Union's compliance with the Casino Act.

36.	On January 18, 2013, the Commission wrote a letter to the Union (attached as Exhibit B) ordering that it "cease and desist from any union activities at the Divi Carina Bay Resort that will cause any further violations of 32 V.I.C. § 445." The Commission also ordered the Union to "withdraw . . . NLRB Charge Against Employer Case # 24-CA-096579 filed on behalf of the [Union], until [the Union] compl[ies] with the registration requirement of 32 V.I.C. § 445." The Commission concluded its January 18, 2013 correspondence with a "stern warning" that it would enforce the provisions of 32 V.I.C. § 445(d) and (e), which respectively provide for criminal and civil sanctions against a non-complying union, if the Union refused to comply with the Commission's order immediately.

37.	In response to the Commission's January 18, 2013 order, the Board's Tampa Office sent the Commission an email (attached as Exhibit C) with several questions concerning the Casino Act and the Union's status as a registrant, noting that Section 445 appeared to conflict with the NLRA.

38.	In a written response to the Board dated January 24, 2013 (attached as Exhibit D), the Commission explained that under its interpretation of the Casino Act, if the Union failed to register, Section 445 of the Casino Act prevents the Union from

9

representing employees, bargaining any agreement with a casino entity, or entering casino employers' facilities in order to speak with employees about work conditions. In its response, the Commission also affirmed that any Board-supervised election involving an unregistered union would violate the Casino Act.

39. Following further correspondence between Board attorneys and the Commission, counsel for the Commission notified the Board by email on May 31, 2013 (attached as Exhibit E), that the Commission had rescinded its prior order requiring the Union to withdraw its Board charge. The email explained that the rescission was based on the Union's imminent registration, "obviating the need for the Commission to exercise its authority in this regard." The May 31 email made no mention of the Commission's prior order of December 19, 2012, effectively directing the Union to cease bargaining while unregistered, nor the other direction in its order of January 18, 2013, commanding the Union to cease and desist from "any union activities" while unregistered.

40. To date, the Commission has not disavowed that it possesses the authority to seek civil and criminal sanctions against a labor organization if it files Board charges or engages in any other union activity while unregistered.

41. By letter to the Board dated January 3, 2014, the Commission's counsel provided assurances that the Union's application for registration would be acted upon promptly. Because of these assurances, the Board took no further action at that time.

42. On February 6, 2014, the Commission issued the Union's first annual registration.

43. On February 7, 2015, the Union's registration with the Commission expired and was not renewed until more than six months later, on August 20, 2015.

44. On February 7, 2016, the Union's registration with the Commission expired and was not renewed until more than two months later, on April 20, 2016.

45. On February 7, 2017, the Union's registration with the Commission expired. On March 22, 2017, the registration was extended to August 21, 2017, when it again expired. More than two years later, on October 21, 2019, the Commission renewed the Union's registration.

46. To date, Divi Carina and the Union have failed to execute a collective bargaining agreement covering Hotel Unit employees or reach a lawful bargaining impasse.

47. For six years, the statutory policies of the NLRA have been and will continue to be stymied by the Commission's actions. Because of the Commission's prior warnings of civil and criminal sanctions for violations of the Casino Act, significant and recurring hiatuses have been woven into the court-ordered bargaining between the Union and Divi Carina each time the Union's registration has expired and its applications for renewal remain pending.

**THE COMMISSION UNLAWFULLY MAINTAINS AND THREATENS ENFORCEMENT OF POLICY UNDER TERRITORIAL LAW, IMPAIRING EMPLOYEE AND UNION RIGHTS UNDER THE NLRA**

48. The Commission's orders of December 19, 2012 and January 18, 2013, and its policy under the Casino Act, require the Union, on pain of felony prosecution and civil liability, to abstain from any union activities on behalf of the Hotel Unit employees during any period when the Union is not registered with the Commission.

49.     Rather than risk the severe civil and criminal sanctions threatened by the Commission, the Union has largely refrained from exercising its representational functions under the NLRA during periods in which its Commission registration has expired and its annual application for re-registration is pending approval by the Commission.

50.     By threatening the Union with criminal and civil sanctions for bargaining or engaging in union activities at Divi Carina Bay Resort while not registered with the Commission, the Commission's orders of December 19, 2012 and January 18, 2013, have impaired the Union's proper representation of Hotel Unit employees as required by Section 8(b)(1)(A) of the NLRA, 29 U.S.C. § 158(b)(1)(A), and have interfered with those employees' rights under Section 7 of the NLRA, 29 U.S.C. § 157, to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

51.     The Commission's policy under the Casino Act thus prevents a labor organization from functioning as a union and deprives employees of federally-protected rights guaranteed by Section 7 of the NLRA, 29 U.S.C. § 157.

**THE COMMISSION UNLAWFULLY MAINTAINS AND THREATENS ENFORCEMENT OF POLICY UNDER TERRITORIAL LAW, IMPAIRING THE OBLIGATION TO BARGAIN COLLECTIVELY UNDER THE NLRA**

52.     The NLRA's mutual obligation between employers and certified unions to bargain collectively pursuant Section 8(d) of the NLRA, 29 U.S.C. § 158(d), is unaffected by local laws requiring a union to be registered with local authorities. *See*

*Flamingo Hilton Reno*, 317 NLRB 361, 361 (1995), *enf'd. mem.*, 95 F.3d 1157 (9th Cir. 1996).

53. Pursuant to the Commission's orders of December 19, 2012 and January 18, 2013, during any period when the Union is not registered with the Commission, the Union is required, on pain of felony prosecution and civil liability, to abstain from meeting with Divi Carina for the purposes of bargaining on behalf of the Hotel Unit employees.

54. The Commission's policy under the Casino Act thus prevents employers and labor organizations from engaging in conduct required and protected by Section 8(a)(5), (b)(3) and (d) of the NLRA, 29 U.S.C. § 158(a)(5), (b)(3), and (d).

### THE COMMISSION UNLAWFULLY MAINTAINS AND THREATENS ENFORCMENT OF POLICY UNDER TERRITORIAL LAW, IMPAIRING THE BOARD'S INVESTIGATORY AND REMEDIAL POWERS

55. The NLRA does not provide a means for the Board to initiate its own unfair labor practice proceedings. Investigation of violations and enforcement of the NLRA are thus dependent on the initiative of private persons to file charges pursuant to Section 10(b) of the Act, 29 U.S.C. § 160(b).

56. The NLRB is the sole party empowered to initiate proceedings to compel compliance with court judgments enforcing the Board's orders. *Amalgamated Util. Workers v. Consol. Edison Co. of New York*, 309 U.S. 261, 270 (1940).

57. The Commission's order of January 18, 2013, requiring the Union to withdraw its unfair labor practice charge filed against Divi Carina, and its assertion of authority to issue such an order, has interfered with the Board's powers under Sections 10 and 11 of the NLRA, 29 U.S.C. §§ 160, 161, to prevent unfair labor practices,

examine witnesses, receive evidence, and seek contempt remedies for court-enforced Board orders that have been violated; the Commission has thereby resisted, impeded, and interfered with the Board and its agents in the performance of their duties in violation of Section 12 of the NLRA, 29 U.S.C. § 162.

58. The Commission's policy under the Casino Act interferes with the Board's powers under Sections 9, 10, and 11 of the NLRA, 29 U.S.C. §§ 159-161, to conduct elections and related proceedings, prevent unfair labor practices, examine witnesses, receive evidence, and seek contempt for court-enforced Board orders that have been violated; the Commission has thereby resisted, impeded, and interfered with the Board and its agents in the performance of their duties in violation of Section 12 of the NLRA, 29 U.S.C. § 162.

59. In sum, the Commission's orders and its policy under the Casino Act stand as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress in enacting the NLRA.

60. Further, the Commission's order of January 18, 2013, and its policy under the Casino Act, impair the efficiency of the Board as the agency of the federal government responsible for enforcing the NLRA.

61. Finally, by the conduct alleged above in paragraphs 1-60, defendants have maintained and enforced a policy under the Casino Act inconsistent with NLRA, and in excess of the authority granted by Congress in the Organic Act.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Declare that the Commission's prior orders and policy under the Casino Act, as alleged above, are invalid as inconsistent with the NLRA, and further declare that 32 V.I.C. § 445(a), (d), and (e), cannot be construed to:

   a. prohibit a labor organization from engaging in representational or other union activities during periods of non-registration,

   b. serve as the basis for any administrative, civil, or criminal enforcement action, or threaten to do the same, against any person for filing charges, giving testimony or otherwise participating in an investigation or proceeding under the NLRA or lawfully exercising rights or complying with a valid judicial order under the NLRA,

   c. resist, prevent, impede, or interfere with the Board or any of its agents in the lawful performance of duties pursuant to the NLRA;

2. Grant such other and further relief as the Court may deem proper.

Respectfully Submitted,

UNITED STATES ATTORNEY

GRETCHEN C.F. SHAPPERT

s/ Angela P. Tyson-Floyd
Angela P. Tyson-Floyd
Assistant United States Attorney
1108 King St., Ste. 201
Christiansted, St. Croix 00820-5080
Tel: (340) 713-4863
angela.p.tyson-floyd@usdoj.gov

NATIONAL LABOR RELATIONS BOARD

William G. Mascioli
Assistant General Counsel
Tel: (202) 273-3746
bill.mascioli@nlrb.gov

        Dawn L. Goldstein
        Deputy Assistant General Counsel
        Tel: (202) 273-2936
        dawn.goldstein@nlrb.gov

        David H. Mori
        Supervisory Attorney
        Tel: (202) 273-3743
        David.Mori@nlrb.gov

        <u>s/David Boehm</u>
        David Boehm
        Trial Attorney
        Tel: (202) 273-4202
        David.boehm@nlrb.gov

        National Labor Relations Board
        Contempt, Compliance, and
          Special Litigation Branch
        1015 Half Street, S.E., Fourth Floor
        Washington, D.C.  20003
        Fax: (202) 273-4244

    Dated at Washington, D.C. and Christiansted, U.S. Virgin Islands this 14th day of February, 2020.