DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

NATIONAL LABOR RELATIONS BOARD,       )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )        Civil Action No. 2020-0007
                                      )
GOVERNMENT OF THE VIRGIN ISLANDS,     )
and VIRGIN ISLANDS CASINO CONTROL     )
COMMISSION,                           )
                                      )
        Defendants.                   )
_____)

Attorneys:
**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
**David P. Boehm, Esq.,**
Washington, DC
        *For Plaintiff*

**Ariel M. Smith, Esq.,**
St. Thomas, U.S.V.I.
        *For Defendant Government of the Virgin Islands*

**Emile A. Henderson, III, Esq.,**
St. Croix, U.S.V.I.
        *For Defendant Virgin Islands Casino Control Commission*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on the "Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative for Failure to State a Claim for which Relief can be Granted" (Dkt. No. 6) filed by Defendant Virgin Islands Casino Control Commission ("Defendant VICCC" or "Commission"); Plaintiff National Labor Relations Board's ("Plaintiff" or "NLRB") "Response in Opposition to Virgin Islands Casino Control Commission's Motion to Dismiss"

(Dkt. No. 14); and Defendant VICCC's Reply (Dkt. No. 21). Additionally, before the Court is Defendant Government of the Virgin Islands' ("Defendant GVI") "Motion to Dismiss" (Dkt. No. 8) and Plaintiff's "Response in Opposition to Government of the Virgin Islands' Motion to Dismiss" (Dkt. No. 18).[1] For the reasons discussed below, the Court will grant Defendant VICCC's Motion to Dismiss on the single issue pertaining to the order directing the Virgin Islands Workers Union Local 611 to withdraw its NLRB charge, but otherwise deny the Motion. The Court will also deny Defendant GVI's Motion to Dismiss.

## I.    BACKGROUND

On February 14, 2020, Plaintiff filed the Complaint in this matter seeking declaratory relief against Defendants. (Dkt. No. 1). According to the Complaint, the Virgin Islands Casino and Resort Control Act of 1995, 32 V.I.C. § 401, *et seq.* ("the Casino Act") regulates the gaming industry in the Virgin Islands, including labor organizations in the gaming industry. (Dkt. No. 1 at ¶¶ 10-11). The Casino Act established Defendant VICCC and made it responsible for administering the statute. *Id.* at ¶¶ 7, 10 (citing 32 V.I.C. §§ 404, 415). Plaintiff is the independent agency of the United States charged with enforcing the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* ("NLRA"). *Id.* at ¶ 5.

Plaintiff alleges that Grape Tree Shores d/b/a Divi Carina Bay Resorts ("Divi Carina") operates a hotel on St. Croix, and in 2008 Plaintiff certified the Virgin Islands Workers Union Local 611 ("the Union") as the exclusive collective-bargaining representative of Divi Carina's hotel employees. (Dkt. No. 1 at ¶¶ 24, 26, 27). Divi Carina and the Union faced obstacles in negotiating with each other. *Id.* at ¶¶ 28-29. In 2009, the Union filed an unfair labor practice charge with Plaintiff alleging that Divi Carina had refused to bargain with the Union. *Id.* at ¶ 28. Plaintiff

---

[1] Defendant GVI has also joined in Defendant VICCC's Motion to Dismiss. (Dkt. No. 11).

issued an order directing Divi Carina to bargain with the Union which the Third Circuit enforced in 2011. *Id.* at ¶¶ 29-31.

The Complaint alleges that in 2012, Divi Carina sent the Union an email stating that Divi Carina could not continue to bargain with the Union due to the Union's failure to register with the Commission in accordance with the Casino Act. *Id.* at ¶ 33. The Union then filed an unfair labor practice charge with Plaintiff alleging that Divi Carina had unlawfully conditioned collective bargaining on the Union's compliance with the Casino Act. *Id.* at ¶ 35. The Complaint alleges that the Commission ordered the Union to cease and desist from union activities because it was not properly registered pursuant to 32 V.I.C. § 445, and further ordered the Union to withdraw the NLRB charge filed against Divi Carina. *Id.* at ¶ 36. Plaintiff corresponded with Defendant VICCC regarding its order and Plaintiff's belief that Section 445 "appeared to conflict with the NLRA." *Id.* at ¶ 37. Defendant VICCC responded that "under its interpretation of the Casino Act, if the Union failed to register, Section 445 of the Casino Act prevents the Union from representing employees, bargaining any agreement with a casino entity, or entering casino employers' facilities in order to speak with employees about work conditions." *Id.* at ¶ 38. Defendant VICCC subsequently notified Plaintiff that it had rescinded its prior order requiring the Union to withdraw its Board charge in light of the Union's "imminent registration." *Id.* at ¶ 39.

The Complaint further alleges that Defendant VICCC issued the Union's first annual registration on February 6, 2014. *Id.* at ¶ 42. Over the next five years however, the Commission repeatedly failed to timely renew the Union's registration for months or even years after it had expired. *Id.* at ¶¶ 43-45. Plaintiff alleges that Defendant VICCC's threats of criminal and civil action prevent the Union from bargaining or engaging in union activities at Divi Carina while not registered with the Commission, and thus interferes with the hotel employees', the Union's, and

the employer's rights under the NLRA, as well as Plaintiff's investigatory and remedial powers under the NLRA. *Id.* at ¶¶ 47-61. Plaintiff thus seeks an Order from the Court declaring that Defendant VICCC's:

> prior orders and policy under the Casino Act . . . are invalid as inconsistent with the NLRA, and further declare that 32 V.I.C. § 445(a), (d), and (e), cannot be construed to:
>> a. prohibit a labor organization from engaging in representational or other union activities during periods of non-registration,
>> b. serve as the basis for any administrative, civil, or criminal enforcement action, or threaten to do the same, against any person for filing charges, giving testimony or otherwise participating in an investigation or proceeding under the NLRA or lawfully exercising rights or complying with a valid judicial order under the NLRA,
>> c. resist, prevent, impede, or interfere with the Board or any of its agents in the lawful performance of duties pursuant to the NLRA.

*Id.* at 15.

Defendant VICCC filed the instant Motion to Dismiss arguing that the Court lacks subject matter jurisdiction to hear the NLRB's claims because the Declaratory Judgment Act does not provide a basis for jurisdiction, and there is no independent basis for jurisdiction. (Dkt. No. 6 at 6-9). In the alternative, Defendant VICCC contends that Plaintiff has failed to state a claim for which relief can be granted because Section 445 is not preempted by the NLRA—under express or field preemption principles—and it does not conflict with the NRLA or the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"). *Id.* at 10-20. Finally, Defendant VICCC argues that the issue of its order directing the Union to withdraw the NLRB charge has been rendered moot. *Id.* at 20-25.

In addition to joining Defendant VICCC's Motion to Dismiss, Defendant GVI filed its separate Motion to Dismiss. In its Motion, Defendant GVI argues that the Complaint should be dismissed because it fails to allege any actions that Defendant GVI took or request any relief from it, and therefore fails to state a claim as to Defendant GVI. (Dkt. No. 8).

Plaintiff opposes both Motions to Dismiss. (Dkt. Nos. 14, 18).

4

## II.    APPLICABLE LEGAL PRINCIPLES

### A. Subject Matter Jurisdiction

It is axiomatic that federal courts are courts of limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts possess subject matter jurisdiction only over cases that present a federal question, 28 U.S.C. § 1331, or when diversity of citizenship exists and the value of the claim exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a).

An attack under Rule 12(b)(1) to a court's subject matter jurisdiction can be either a facial or factual attack. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial attack— as it is denominated—challenges the sufficiency of the jurisdictional allegations in the complaint on their face. *Petruska v. Gannon University*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). In contrast, a factual attack disputes "the factual allegations underlying the complaint's assertion of jurisdiction," and involves the presentation of competing facts. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack requires that a court "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc.*, 220 F.3d at 176. On the other hand, a court may consider evidence beyond the complaint in reviewing a factual attack. *Id.* In so doing, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "no presumptive truthfulness attaches to plaintiff's allegations." *Mortensen,* 549 F.2d at 891. When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (citing *Mortensen*, 549 F.2d at 891).

**B. Standing, Ripeness, and Mootness**

Article III of the Constitution provides that federal judicial power extends to cases and controversies. *See* U.S. Const. art III, § 2, cl.1. Standing is one element of the "case or controversy" requirement of Article III of the Constitution. *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975); *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 224 (3d Cir. 1998) (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-03 (1998)). "Constitutional standing requires (1) injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 193 (3d Cir. 2004)). The burden of proving standing lies with the plaintiff. *Danvers Motor Co.*, 432 F.3d at 291 (citing *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)). If a Court finds that constitutional standing does not exist in a case, the court does not have jurisdiction to hear the case and must dismiss it. *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

In addition to standing, the "case-or-controversy limitation" is enforced "through the several justiciability doctrines that cluster about Article III, including . . . ripeness [and] mootness." *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)) (internal quotation marks omitted). While ripeness and standing "originate from the same Article III requirement of a case or controversy," *Free Speech Coalition, Inc. v. AG United States*, 825 F.3d 149, 167 n.15 (3d Cir. 2016), "ripeness

tells us when a proper party may bring an action and . . . standing tells us who may bring the action," *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994). "[R]ipeness works 'to determine whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Plains All Am. Pipeline L.P.*, 866 F.3d at 539 (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). "Ripeness prevents courts from 'entangling themselves in abstract disagreements.'" *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). In order for a case to be ripe, it must be a "real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Presbytery of New Jersey of Orthodox Presbyterian Church*, 40 F.3d at 1463 (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)) (internal quotation marks omitted).

Finally, under Article III, "if a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it." *United States v. Virgin Islands*, 363 F.3d 276, 284-85 (3d Cir. 2004); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) ("The Constitution's case-or-controversy limitation on federal judicial authority . . . underpins both our standing and our mootness jurisprudence, but the two inquiries differ . . . ."). The mootness doctrine prevents federal courts from issuing advisory opinions by requiring that an actual controversy exists between adverse litigants. *See, e.g.*, *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996) ("If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot."). A

justiciable case or controversy requires that a party have a continuing, personal interest in the outcome of the litigation. *See, e.g.*, *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) ("[M]ootness ensures that this [requisite personal] interest 'continues throughout' the duration of the case." (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997))). In addition, when events subsequent to the filing of a case mean that the decision of the federal court will not have any effect in the matter before it, the case must be dismissed as moot. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895))).

Because a suit must be justiciable throughout its pendency, a mootness challenge to subject matter jurisdiction may arise at any time. *See Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 346-47 (3d Cir. 2003); *Williams v. Sec'y Penn. Dep't of Corr.*, 447 Fed. App'x 399, 402 (3d Cir. 2011). A case is moot if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, … and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Phillips v. Penn. Higher Educ. Assistance Agency*, 657 F.2d 554, 569 (3d Cir. 1981) (internal quotation marks and citations omitted).

### C. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The Third Circuit, as articulated in *Connelly v. Lane Const. Corp.*, employs a three-step process in applying the analysis established by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal*:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Ashcroft*, 556 U.S. at 675, 679) (internal citations omitted); *see also Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (stating that when ruling on a motion to dismiss for failure to state a claim, courts accept a plaintiff's "factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted)).

At the Rule 12(b)(6) stage, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.    DISCUSSION

### A.  Subject Matter Jurisdiction

### 1.  Basis for the Court's Jurisdiction

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

9

"A 'case of actual controversy' means one of a justiciable nature." *Wyatt V.I. Inc. v. Gov't of the Virgin Islands*, 385 F.3d 801, 805 (3d Cir. 2004) (citing *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 325 (1936)). One of the purposes of the Declaratory Judgment Act is to "clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990).

It is clear that the Declaratory Judgment Act does not provide the Court with subject matter jurisdiction. *See Allen v. DeBello*, 861 F.3d 433, 444 (3d Cir. 2017) ("The Declaratory Judgment Act does not . . . provide an independent basis for subject-matter jurisdiction; it merely defines a remedy."); *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) ("[The Declaratory Judgment Act] does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject matter jurisdiction."). Thus, a separate basis for jurisdiction must exist in order for this action to proceed.

Defendant VICCC first argues that the Court lacks subject matter jurisdiction because there exists no independent basis for federal jurisdiction on the face of the well-pleaded complaint. (Dkt. No. 6 at 6). Defendant VICCC contends that, in accordance with the well-pleaded complaint rule, a party cannot invoke federal jurisdiction in anticipation of a federal defense, including preemption. *Id.* Plaintiff responds that, while it doesn't challenge the facial validity of the Casino Act, it challenges the application and enforcement of the Act by Defendant VICCC in a manner inconsistent with the NLRA. (Dkt. No. 14 at 1-2). Thus, Plaintiff argues that this plainly presents a federal question under 28 U.S.C. §§ 1331 and 1337(a). *Id.* at 2, 8.

Pursuant to 28 U.S.C. § 1331, federal courts have jurisdiction over actions that "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) ("A plaintiff properly invokes § 1331 jurisdiction when

she pleads a colorable claim 'arising under' the Constitution or laws of the United States."). When faced with determining whether the Court has original "arising under" jurisdiction, the "well-pleaded complaint rule" applies under which "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Defendant VICCC relies on the well-established principle that the existence of a federal defense does not create federal question jurisdiction. *See Caterpillar*, 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").[2] However, the Court does not agree that the Complaint merely presents a federal defense.

"The NLRA does not explicitly authorize the NLRB to seek declaratory relief against a state government on preemption grounds." *N.L.R.B. v. Arizona*, CV 11-00913-PHX-FJM, 2011 U.S. Dist. LEXIS 118537, at *18-20 (D. Ariz. Oct. 13, 2011) (citing 29 U.S.C. § 160). However, the Supreme Court has recognized that "[i]t has long been held that the Board, though not granted express statutory remedies, may obtain appropriate and traditional ones to prevent frustration of the purposes of the [National Labor Relations] Act." *N.L.R.B. v. Nash-Finch Co.*, 404 U.S. 138, 142 (1971) (holding that the NLRB may obtain an injunction of a state court action because there

---

[2] Defendant VICCC relies on the principle articulated by the Supreme Court that: "[I]n many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the [state] courts. . . . Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952).

exists "an implied authority of the Board . . . to enjoin state action where its federal power preempts the field."); *see also N.L.R.B. v. California Horse Racing Bd.*, 940 F.2d 536, 539 (9th Cir. 1991) ("[T]he parties do not dispute that when the Board properly exercises its jurisdiction under the NLRA, the district court, on the Board's motion, may enjoin the enforcement of state regulation as preempted by the Board's action. That power of the district court was confirmed by *NLRB v. Nash-Finch Co. . . . .*"). As stated by the Supreme Court, where the NLRB attempts to enforce the NLRA, "[t]he exclusiveness of the federal domain is clear; and where it is a public authority that seeks protection of that domain, the way seems clear. For the Federal Government and its agencies, the federal courts are the forum of choice." *Nash-Finch Co.*, 404 U.S. at 147.

The Third Circuit has previously found that a complaint seeking declaratory relief that territorial regulations are preempted by the NLRA presents a federal question under 28 U.S.C. § 1331. *See St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 241-42 (3d Cir. 2000) ("The associations seek injunctive and declaratory relief from enforcement of a territorial regulation on the ground that the regulation is preempted by the NLRA, a federal statute which grants employers as well as employees substantive federal rights. . . . The Supreme Court has recognized that such a challenge presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983)))[3]; *see also Shaw*, 463 U.S. at 96 n.14 ("It is beyond dispute that federal courts

---

[3] In applying this principle to the Virgin Islands, the Third Circuit stated:

> Preemption derives from the Supremacy Clause of the United States Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Those principles are made applicable to the laws of the Virgin Islands through the Revised Organic Act, which authorizes the Virgin Islands legislature to enact territorial laws that are "not inconsistent with . . . the laws of the United States made applicable to the Virgin Islands." 48 U.S.C. § 1574(a).

have jurisdiction over suits to enjoin state officials from interfering with federal rights. . . . A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." (internal citations omitted)); *Lawrence Cty. v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 259 n.6 (1985) (stating that it was erroneous for a court of appeals to conclude that a suit seeking a declaratory judgment that a state statute conflicted with a federal statute did not arise under federal law); *United States v. City of Arcata*, 629 F.3d 986, 990 (9th Cir. 2010) ("The government's complaint posed a federal question in its own right because it sought invalidation of the ordinances under federal law."); 20 Charles Alan Wright & Mary Kay Kane, *Fed. Prac. & Proc. Deskbook* § 19 (2d ed. 2019) ("[A] party may also go to federal court to enjoin state officers from enforcing a state statute or for a declaratory judgment that they cannot enforce the statute because it is preempted by federal law. There is federal-question jurisdiction of a suit of this kind. . . . This right of action can be asserted only when a state official is the defendant, so that there is no federal jurisdiction if a private party sues another private party, contending that federal law has preempted a duty the plaintiff otherwise owed to the defendant.").

---

*St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 237-38 (3d Cir. 2000). Interestingly, in *Lewis v. Alexander*, the Third Circuit referred to its finding in *St. Thomas-St. John Hotel & Tourism Ass'n* that federal question jurisdiction existed as dicta. 685 F.3d 325, 346 n.18 (3d Cir. 2012). The Court is unable to reconcile this conclusion with the Third Circuit's explicit statement in *St. Thomas-St. John Hotel & Tourism Ass'n* that "[j]urisdiction is established in this case under 28 U.S.C. § 1331," 218 F.3d at 241, together with the Circuit's explanation regarding the applicability of the Supremacy Clause to the Virgin Islands. In any event, whether dicta or not, this Court finds the analysis persuasive and therefore adopts it here.

Accordingly, this Court has subject matter jurisdiction over this matter based on federal question jurisdiction under 28 U.S.C. § 1331.[4] *See St. Thomas-St. John Hotel & Tourism Ass'n*, 218 F.3d at 241-42; *N.L.R.B. v. Arizona*, 2011 WL 4852312, at *6 (in an action by NLRB against a state government seeking declaratory relief that a state law was preempted by the NLRA, finding the court had jurisdiction under 28 U.S.C. § 1331).[5]

### 2. Standing

Having determined that the Court has federal question jurisdiction, the Court must also determine whether Plaintiff has established that it has met the requirements for standing. *See St. Thomas-St. John Hotel & Tourism Ass'n, Inc.*, 218 F.3d at 240 ("A declaratory judgment or injunction can issue only when the constitutional standing requirements of a 'case' or 'controversy' are met."). As noted above, "[c]onstitutional standing requires (1) injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely as opposed to merely speculative, that the injury

---

[4] Additionally, 28 U.S.C. § 1337 provides in relevant part that "district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." The NLRA is a law regulating commerce for purposes of 28 U.S.C. § 1337. *Cap. Serv. v. N.L.R.B.*, 347 U.S. 501, 504 (1954). A district court in Arizona has found that, in addition to exercising its subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in a declaratory judgment action by the NLRB against a state government, a federal court also has jurisdiction under 28 U.S.C. § 1337(a). *See N.L.R.B. v. Arizona*, 2011 WL 4852312, at *6. The same applies here.

[5] Other courts have impliedly held that federal courts are permitted to hear such cases provided that the case presents a case or controversy and standing exists. *See N.L.R.B. v. North Dakota*, 504 F. Supp. 2d 750, 753-54 (D.N.D. 2007) (determining that the district court had subject matter jurisdiction to issue a declaratory judgment against North Dakota based on preemption of the NLRA of state law because such an issue constituted an actual controversy); *Nat'l Lab. Rels. Bd. v. Oregon*, No. 6:20-CV-00203-MK, 2020 WL 5994997, at *4 (D. Or. Oct. 9, 2020) (dismissing NLRB's complaint for lack of standing but permitting NLRB to file an amended complaint).

will be redressed by a favorable decision." *Danvers Motor Co.*, 432 F.3d at 290-91 (citing *Lujan*, 504 U.S. at 560-61); *see also Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017) ("The plaintiff, 'as the party invoking federal jurisdiction,' bears the burden of establishing the minimal requirements of Article III standing: '(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016))).

Plaintiff argues that it has established all three elements of the standing analysis. First, it argues that the injury is to its legally protected interest in administering federal law which it is charged with enforcing. (Dkt. No. 14 at 10). Second, Plaintiff maintains that the challenged territorial policies are the factual cause of NLRB's claim. *Id.* Finally, Plaintiff contends that the declaratory judgment will redress the injury by preventing Defendants from engaging in the challenged conduct in the future. *Id.* at 10-11. On the other hand, Defendant VICCC argues that Plaintiff lacks a "concrete and particularized" injury as the Complaint references only an order from 2013, and many years have passed without enforcement of the order. (Dkt. No. 21 at 7-8). Thus, Defendant VICCC asserts that the injury is merely conjectural and hypothetical. *Id.*

The Court finds that Plaintiff has satisfied the three elements of standing. First, regarding injury-in-fact, a plaintiff must allege "the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Finkelman v. NFL*, 877 F.3d 504, 510 (3d Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016)) (internal quotation marks omitted). "A harm is particularized if it affects the plaintiff in a personal and individual way. It is concrete if it is *de facto*; that is, it must actually exist rather than being only abstract." *Id.* (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 272) (internal quotation marks omitted). In this case, Plaintiff

15

certified, pursuant to 29 U.S.C. § 159, that the Union was the exclusive collective-bargaining representative of the employees at Divi Carina; found that Divi Carina had violated the NLRA in refusing to recognize and bargain with the Union; and ordered Divi Carina to recognize and bargain with the Union. *Grapetree Shores, Inc. d/b/a Divi Carina Bay Resort and Virgin Islands Workers Union*, 356 N.L.R.B. 273 (2010). The Third Circuit granted Plaintiff's petition to enforce the order against Divi Carina. *N.L.R.B. v. Grapetree Shores, Inc.*, 451 Fed. App'x 143, 148 (3d Cir. 2011). The Complaint alleges that after being ordered to bargain with the Union, Divi Carina stated that "it could not bargain until the Union had registered with the Commission [out of concern] that continued bargaining could lead to its own criminal liability for aiding and abetting the Union's failure to register with the Commission under the Casino Act." (Dkt. No. 1 at ¶ 33). The Complaint further alleges that there are significant periods of time where the Union has not been registered under the Casino Act, and the fear of civil and criminal penalties under the Casino Act has continued to interfere with bargaining between the Union and Divi Carina during times that the Union is not registered. *Id.* at ¶¶ 42-45, 47, 49.

Based on the foregoing, the Court finds that Plaintiff has established a concrete and particularized injury to Plaintiff's statutory authority to uphold the NLRA and ensure compliance with its statutorily authorized orders directing employers and employees to bargain with each other. *See Illinois DOT v. Hinson*, 122 F.3d 370, 372 (7th Cir. 1997) (stating that an agency has standing to "complain about the curtailment of its statutory powers." (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982))); *see also N.L.R.B. v. Arizona*, 2011 WL 4852312, at *3 (finding where a state law created parallel statutory enforcement rights that "[t]he alleged incursion on plaintiff's exclusive enforcement powers is neither remote nor

speculative. By the very existence of the amendment the injury has already occurred, and affects plaintiff's legal rights by undermining its exclusive authority to administer the NLRA.").

The Court is not persuaded by Defendant VICCC's argument that the injury is neither actual nor imminent because it stems from an order issued in 2013. (Dkt. No. 21 at 7-8). Defendant VICCC argues that there has been "no such [subsequent] order or resurgence of such an order" or "any such application or enforcement." *Id.* at 8. Plaintiff alleges, however, that the injury is ongoing because of the continued threat of civil and criminal prosecution for engaging in union activities while the Union is not registered in compliance with the provisions of the Casino Act. (Dkt. No. 1 at ¶¶ 34, 36, 47). Plaintiff further alleges, that while Defendant VICCC rescinded its order directing the Union to withdraw its Board charge, the Commission never withdrew its directive that the Union must cease and desist from union activities while unregistered, or its threat of sanctions for noncompliance. *Id.* at ¶¶ 39, 40.

The Court finds that there is an ongoing injury to Plaintiff in that the overhanging threat of enforcement by Defendant VICCC continues to interfere with Plaintiff's directive, issued pursuant to the NLRA, that the Union and Divi Carina engage in bargaining. Additionally, the Commission's interpretation of the Casino Act includes the liability of Plaintiff's representatives who perform their duties under the NLRA in connection with Union activities undertaken when the Union is unregistered. (*See* Dkt. No. 1-5 at 6 ("If a representation election was held and overseen by the NLRB at the casino facilities about four years ago, [d]id the casino, the union or even the NLRB representatives violate this law when it held this election? **CCC Response:** If this activity was held by a non registered union, 32 V.I.C. § 445 was violated.")). Moreover, unlike the order directing the Union to withdraw its NLRB charge—which is discussed below—Defendant

VICCC vigorously defends the actions it has taken pursuant to Section 445.[6] Thus, notwithstanding the passage of time since Defendant VICCC's order, its current position on Section 445 remains unchanged. The injury is therefore no less actual and no less imminent than it was in 2013. *See Lewis v. Alexander*, 685 F.3d 325, 339 (3d Cir. 2012) ("Plaintiffs are indeed likely to have these provisions imminently enforced against them. First, all Plaintiffs fall within the scope of these statutory provisions, such that Plaintiffs would be burdened by these provisions if they were enforced. Second, DPW has stated that it intends to enforce all the requirements of the statute should it prevail. This establishes an imminent injury in fact.").[7]

---

[6] Those actions include Defendant VICCC's "stern warning" that it will enforce the sanctions provisions for continued noncompliance with the registration requirement. (Dkt. No. 1-3). They also include Defendant VICCC's unequivocal responses to the NLRB's inquiries regarding Defendant VICCC's interpretation of the Casino Act as prohibiting the Union from engaging in union activities unless registered. (*See* Dkt. No. 1-5 at 4 ("Does this provision, law or guideline prevent the Union from representing employees if they are not registered with the CCC? **CCC Response:** Yes. Additionally *32 V.I.C. § 445(d) and (e)* outline the severe sanctions for any violation of this Section."); *id.* ("Does this provision, law or guideline prevent the Union from bargaining any agreement with a casino entity if they are not registered with the CCC? **CCC Response:** Yes."); *id.* at 5-6 ("Can the casino representatives allow the union representatives to enter the facilities without the Union first registering in the CCC, and if not, then explain and detail the penalties for both the Union and the casino representatives (if any). **CCC Response:** No. Penalties for *violations of 32 V.I.C. § 445(a) are contained in 32 V.I.C. § 445(d) and (e)*."); *id.* at 6 ("Does this law or provision prevent[] a union representative from freely entering the public areas and speak[ing] to the employees about their work conditions. If not, explain. **CCC Response:** Yes. We believe that the provisions of *32 V.I.C. § 445* are self-explanatory."); *id.* ("If a representation election was held and overseen by the NLRB at the casino facilities about four years ago, [d]id the casino, the union or even the NLRB representative violate this law when it held this election? **CCC Response:** If this activity was held by a non registered union, 32 V.I.C. § 445 was violated."); *id.* at 7 ("Can an NLRB election at the casino facilities ever be held with a union that has not yet registered with the CCC? **CCC Response:** No."); *id.* ("Does the CCC recognize the NLRB representation certifications even though the union was not properly registered with the CCC? **CCC Response:** No.").

[7] In addition, the Third Circuit has stated:

> [A] plaintiff seeking a declaratory judgment must possess constitutional standing but need not have suffered "the full harm expected." In such a case, we have said, a plaintiff has Article III standing if "there is a substantial controversy, between parties having adverse

With regard to the second factor—causation—the Court finds that Plaintiff has demonstrated that there is a causal connection between its injury and the conduct complained of. Specifically, Defendant VICCC's particular interpretation of the Casino Act—as reflected in its 2013 order and its responses to the NLRB's inquiries—and its present defense of it causes the injury to Plaintiff's authority to uphold and enforce the NLRA.

Finally, the Court also finds that Plaintiff has met the third factor of redressability. Indeed, a declaratory judgment that Defendants' actions are preempted by federal law would allow the Union and Divi Carina to bargain with each other, pursuant to Plaintiff's order, without the threat of enforcement actions against them for violating Virgin Islands law. *See N.L.R.B. v. Arizona*, 2011 WL 4852312, at *3 ("A declaratory judgment that [the state law] is preempted would redress plaintiff's injury by rendering the amendment unenforceable and affirming plaintiff's exclusive power to enforce § 7 and § 8 of the NLRA.").

In view of the foregoing, Plaintiff has established that it has standing to pursue this action and Defendants' arguments to the contrary are rejected.

---

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 193-94 (3d Cir. 2004) (quoting *St. Thomas-St. John Hotel & Tourism Ass'n*, 218 F.3d at 240) (internal citations omitted). In *St. Thomas-St. John Hotel & Tourism Ass'n* case, the Third Circuit found a substantial controversy in an analogous action seeking a declaratory judgment that the Virgin Islands Wrongful Discharge Act was preempted by the NLRA. The Third Circuit found that there was a substantial controversy because "[a]s a consequence of the enforcement of the WDA, the employers' ability to freely discharge their employees or to contract for terms of discharge was limited as they would be subject to liability if they discharged their employees for reasons other than those stated in the challenged act." *St. Thomas-St. John Hotel & Tourism Ass'n, Inc.*, 218 F.3d at 240. The Third Circuit further found that "[t]he parties' interests in this action could not be more adverse, as the government and employees, both defendants here, seek to enforce the protections provided by the WDA, and the employers, through the associations, seek to avoid enforcement of those protections." *Id.* at 240-41.

### 3. Ripeness

Although not addressed by the parties—and thus seemingly uncontested—the Court additionally finds that the case is ripe. *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) ("This court has recognized that considerations of ripeness are sufficiently important that the court is required to raise the issue *sua sponte* even though the parties do not." (citing *Felmeister v. Office of Attorney Ethics, Div. of the New Jersey Administrative Office of the Courts*, 856 F.2d 529, 535 (3d Cir. 1988))); *see, e.g.*, *TDY Indus. v. Nat'l Freight Transp., Inc.*, Civil Action No. 07-984, 2009 U.S. Dist. LEXIS 21947, at *24-42 (W.D. Pa. Mar. 12, 2009) (*sua sponte* addressing ripeness in a declaratory judgment action and finding an issue was ripe for determination). In an action for a declaratory judgment, courts in the Third Circuit apply a "refined test" for ripeness wherein courts look at "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Plains All Am. Pipeline L.P.*, 866 F.3d at 539-40 (quoting *Khodara Env't, Inc.*, 376 F.3d at 196). All of these factors are satisfied here.

First, the parties in this matter are adverse—the Complaint alleges that over the past few years the Union went through periods of time when it was unregistered, and the threats of enforcement of the Casino Act has thus continuously interfered with Plaintiff's directive issued pursuant to the NLRA that the Union and Divi Carina engage in bargaining. *See Wayne Land & Min. Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 523 (3d Cir. 2018) ("Adversity is assessed by asking '[w]hether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm.' 'It is not necessary for the party seeking review to have suffered a completed harm in order to establish adversity of interest so long as there is a substantial threat of real harm that remains throughout the course of the litigation.'" (quoting *Surrick*, 449 F.3d at 527) (internal citation omitted)). Second, a judgment would be conclusive in determining

whether noncompliance with the Section 445 registration requirement can be interpreted to foreclose collective bargaining between the Union and Divi Carina as directed by the NLRB. *See id.* (stating that in regard to the second factor, "[a] claim is fit for adjudication if a 'declaratory judgment would in fact determine the parties' rights, as distinguished from an advisory opinion based on a hypothetical set of facts.'" (quoting *Surrick*, 449 F.3d at 528)). Third, the judgment determining the legality, as applied, of Section 445 would serve the purpose of clarifying the rights between the parties as it pertains to the extent of enforceability of Section 445 in the face of an NLRB directive to engage in collective bargaining. *See id.* at 524 ("In the context of the Declaratory Judgment Act, utility exists when the judgment would 'materially affect the parties and serve ... [to] clarify[ ] legal relationships so that plaintiffs ... [can] make responsible decisions about the future.'" (quoting *Surrick*, 449 F.3d at 529) (alterations in original)). Thus, the dispute is ripe in that it is "sufficiently concrete" for the action to be brought at this time. *See Plains All Am. Pipeline L.P.*, 866 F.3d at 539.

### 4.  Mootness

Defendant VICCC also argues that there is no actual case or controversy relative to Plaintiff's challenge to Defendant VICCC's order to withdraw complaints or grievances with the NLRB because Defendant VICCC rescinded the order. Accordingly, Defendant VICCC maintains that the issue is now moot. (Dkt. No. 6 at 20-25).

In a case seeking declaratory relief, "a defendant arguing mootness must show that there is no reasonable likelihood that a declaratory judgment would affect the parties' future conduct." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020). "The party urging mootness bears the 'heavy burden' of showing that it will not 'revert to' its prior policy." *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (quoting *Trinity Lutheran*

*Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017)); *see also Friends of the Earth*, 528 U.S. at 189. In a situation where "the defendant argues mootness because of some action it took unilaterally after the litigation began" known as "voluntary cessation," this "will moot a case only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Hartnett*, 963 F.3d at 306 (quoting *Fields*, 936 F.3d at 161) (internal quotation marks omitted). Courts are "reluctant" to declare cases moot on the basis of voluntary cessation. *Id.*

According to the Complaint, on January 18, 2013, Defendant VICCC issued its letter ordering the Union to withdraw its NLRB charge, and on May 31, 2013, Defendant VICCC notified Plaintiff that it had rescinded that order. (Dkt. Nos. 1 at ¶¶ 36, 39; 1-3; 1-6). Defendant VICCC argues that the issue is now moot because in the eight years since it rescinded the order, it has never been reissued, and Defendant VICCC concedes that it did not have the authority to issue such an order. (Dkt. No. 6 at 24). Plaintiff argues, on the other hand, that the issue is not moot because the email rescinding Defendant VICCC's order made it clear that the Commission believed that the "rescission was wholly a matter of its discretion based on the Union's imminent registration, rather than the VICCC's determination that the order was beyond its authority." (Dkt. No. 14 at 12). Plaintiff also argues that the change in position is merely a litigation posture which is insufficient to moot the issue. *Id.* at 12-13.

The Court agrees with Plaintiff's contention that at the time the order regarding the withdrawal of the Board charge was issued and subsequently rescinded, it is clear that Defendant VICCC believed such an order to be lawful. Indeed, the email attached to the Complaint states that the order was rescinded because "[t]he Union has indicated it will register with the Commission

within the next three business days thus obviating the need for the Commission to exercise its authority in this regard." (Dkt No. 1-6 at 1).

However, Defendant VICCC now concedes that its order lacked statutory, regulatory, or any other authority. (Dkt. No. 6 at 24). Specifically, Defendant VICCC states:

> A thorough review of the [Casino] Act reveals that neither the Act nor the VICCC's own Rules and Regulations authorizes the VICCC to "order" an unregistered individual, or organization to act or refrain from acting within rights granted under federal law. Nothing in the available list of penalties in the Act to address non-compliance with the registration requirement of § 445 empowers the VICCC to order a union to withdraw an unfair labor practice charge filed with the NLRB . . . . In fact, the VICCC's powers are limited to the administration and enforcement of the local laws, rules, and regulations as enumerated in the Act, none of which empowers the VICCC to order a nonregistered, non-compliant applicant union to withdraw an unfair labor practice charge.

*Id*. Such a position weighs in favor of finding that the matter is moot because Defendant VICCC no longer defends its position. *Cf. Hartnett*, 963 F.3d at 306 ("We will understandably be skeptical of a claim of mootness when a defendant . . . assures us that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along."); *Fields*, 936 F.3d at 161 ("[T]he House continues to defend the constitutionality of the pre-2017 sign and Speaker statement despite its counsel's statements at oral argument that it would not reinstate them. As a result, it is not 'absolutely clear' that the House would not revert to its pre-2017 policy in the future."); *United States v. Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004) ("[T]he GVI's continued defense of the validity and soundness of the contract prevents the mootness argument from carrying much weight."). Indeed, Defendant VICCC has gone much beyond the rationale articulated in rescinding the order by now conceding before this Court that it had no authority whatsoever to issue such an order.

The Third Circuit has also instructed courts to look at the reason for a defendant's change in behavior. *See Hartnett*, 963 F.3d at 306-07 ("[T]he defendant's reason for changing its behavior

is often probative of whether it is likely to change its behavior again. We will understandably be skeptical of a claim of mootness when a defendant yields in the face of a court order and assures us that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along.").

Here, it is clear that Defendant VICCC's change in position came about during—if not from—this litigation. However, given the fact that Defendant VICCC has now completely disavowed its prior position and conceded that it is not authorized, as a legal matter, to order the Union to withdraw its Board charge, there is no longer a disputed issue. Therefore, the Court finds that the issue is moot. *See Hartnett*, 963 F.3d at 308 ("The lack of any disagreement between the parties over the facts or the law, and the lack of any continuing injury to the teachers, is precisely what makes the case moot. And once that happens, any declaratory judgment would be an advisory opinion."); *Fields*, 936 F.3d at 162 ("The House has disavowed the security guard's actions in this one-off incident. . . . Its choice not to defend the security guard's actions weighs in favor of mootness."). The Court will therefore grant Defendant VICCC's Motion to Dismiss as it pertains to the issue of the Commission's order directing the Union to withdraw its Board charge on grounds of mootness.

### B. Failure to State a Claim

#### 1. Defendant VICCC

Defendant VICCC also argues that the Complaint must be dismissed for failure to state a claim because the only type of preemption applicable to the NLRA is conflict preemption and "[n]othing in Plaintiff's complaint supports the notion that the NLRA and § 445 are in conflict." (Dkt. No. 6 at 11). Plaintiff counters that the Complaint sufficiently alleges a claim that "the VICCC has unlawfully applied the Casino Act in a manner that conflicts with federally protected

rights, harms the efficiency of the Board as the federal agency charged with enforcing [the NLRA], and impairs compliance with a judgment issued under the NLRA." (Dkt. No. 14 at 13).

There are three versions of preemption wherein federal law displaces state or territorial law: "(1) 'express preemption,' which arises when there is an explicit statutory command that state law be displaced, . . . (2) 'field preemption,' which arises when federal law so thoroughly occupies a legislative field as to make reasonable the inference [that] Congress left no room for the States to supplement it,' . . . and (3) 'conflict preemption,' which arises when a state law makes it impossible to comply with both state and federal law or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *St. Thomas-St. John Hotel & Tourism Ass'n*, 218 F.3d at 238 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992); *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) (internal quotation marks omitted).

The NLRA does not contain an express preemption provision, and "because the NLRA regulates in an area of law traditionally regulated by the states, any NLRA preemption analysis starts 'with the basic assumption that Congress did not intend to displace state law.'" *St. Thomas-St. John Hotel & Tourism Ass'n*, 218 F.3d at 238 (quoting *Building and Constr. Trades Council v. Associated Builders and Contractors of Mass./R.I.*, 507 U.S. 218, 224 (1993)). "[A]lthough the NLRA neither contains an express preemption provision nor indicates a congressional intent to usurp the entire field of labor-management relations, courts have often found state laws impliedly preempted by conflict with the NLRA, its express provisions as well as its underlying goals and policies, on the ground that the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives' of Congress." *Id.*; *see also Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Local 54*, 468 U.S. 491, 501 (1984) ("Even in the absence of such

express language or implied congressional intent to occupy the field, we may nevertheless find state law to be displaced to the extent that it actually conflicts with federal law. Such actual conflict between state and federal law exists when 'compliance with both federal and state regulations is a physical impossibility,' . . . or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963); *Hines*, 312 U.S. at 67) (internal citations omitted)).

Defendant VICCC argues that Section 445 is not subject to preemption. However, none of its arguments warrants dismissal of this action for failure to state a claim.

Defendant VICCC asserts that "[t]he United States Supreme Court has consistently held that there is no conflict with the NLRA when a casino control commission requires that a labor organization seeking to represent casino employees registers with it." (Dkt. No. 6 at 12; *see also* Dkt. No. 21 at 15). In support of this assertion, Defendant VICCC cites to *Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Local 54*, 468 U.S. 491, 510 n.15 (1984) and *Hill v. Florida ex. rel. Watson*, 325 U.S. 538, 543 (1945). *Id.* However, in neither case did the Supreme Court make the broad holding that Defendant VICCC ascribes to it.

In *Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Local 54*, the Supreme Court examined a New Jersey statute enacted to combat organized crime within the casino industry that imposed disqualification criteria on officials of labor organizations representing casino industry employees. 468 U.S. at 494, 496-97. The statute also included penalties for labor unions for non-compliance with the disqualification criteria, which stated in relevant part:

> No labor organization, union or affiliate registered or required to be registered pursuant to this section and representing or seeking to represent employees licensed or registered under this act may receive any dues from any employee licensed or registered under this act and employed by a casino licensee or its agent, or administer any pension or welfare funds, if

> any officer, agent, or principal employee of the labor organization, union or affiliate is
> disqualified in accordance with the criteria contained in section 86 of this act.

*Id.* at 497. While the Supreme Court held that the statute imposing disqualification criteria on union officials did not conflict with the NLRA and thus was not preempted, *id.* at 509, this holding was not without its limitations. Specifically, the Court noted that "this conclusion does not implicate the employees' express § 7 *right to select a particular labor union as their collective-bargaining representative*, but only their subsidiary right to select the officials of that union organization." *Id.* (emphasis added). Accordingly, the Court remanded the case on the issue of the dues penalty portion of the statute "so that the District Court c[ould] make the requisite findings of fact to determine whether imposition of the dues collection ban will so incapacitate Local 54 as to prevent it from performing its functions as the employees' chosen collective-bargaining agent." *Id.* at 511.[8]

The critical issue here, therefore, is not—as Defendant VICCC maintains—that Congress has "disclaimed any intent to pre-empt all state regulation which touches upon the specific right of employees to decide which individuals will serve as officials o[f] their bargaining representatives." (Dkt. No. 6 at 13, 15, 17 (quoting *Brown*, 468 U.S. at 504)). That issue is not in dispute. Rather, for present purposes, of particular significance is the acknowledgement in *Brown*—via the Court's remand to the District Court for findings of fact—that concerns would

---

[8] The statute in *Brown* also imposed a requirement that the labor organizations seeking to represent persons employed in casinos or casino hotels must register annually with the Commission. *Brown*, 468 U.S. at 496. The Supreme Court did not ultimately address the registration requirement of the state statute, but simply mentioned in a footnote that: "Appellees have not shown that this requirement of registration *imposes any burden on them*. Indeed, they effectively concede that this § 93(a) requirement standing alone presents no conflict with federal law on the authority of *Hill* v. *Florida ex rel. Watson*. See 325 U.S. at 543 (finding that the filing requirement 'in and of itself' does not conflict with the NLRA)." *Brown*, 468 U.S. at 510 n.15 (emphasis added).

27

arise if the dues collection ban would "so incapacitate [the Union] as to prevent it from performing its functions as the employees' chosen collective bargaining agent." *Brown*, 468 U.S. at 511.

The Supreme Court's opinion in *Hill* reflects a similar qualification to what might superficially appear to be a broad holding. In *Hill v. Florida ex. rel. Watson*, the Supreme Court held that a Florida statute, as applied, to enjoin a union and its business agent from functioning until they complied with Florida's licensing and reporting requirements conflicted with the NLRA. 325 U.S. at 542-43. It is true, as Defendant VICCC notes, that the Supreme Court in *Hill* concluded that the filing requirement "in and of itself" did not conflict with the NLRA. (Dkt. No. 6 at 12).[9] However, the Supreme Court also noted that the issue of the sanction imposed was a different matter entirely. *See Hill*, 325 U.S. at 543. Specifically, the Court stated:

> The requirement as to the filing of information and the payment of a $ 1.00 annual fee does not, in and of itself, conflict with the Federal Act. *But, for failure to comply, this union has been enjoined from functioning as a labor union.* It could not without violating the injunction and also subjecting itself to the possibility of criminal punishment even attempt to bargain to settle a controversy or a strike. *It is the sanction here imposed, and not the duty to report, which brings about a situation inconsistent with the federally protected process of collective bargaining.*

*Id.* (emphasis added).[10]

Thus, it is not sufficient to simply rely—as Defendant VICCC does—on the assertion that the registration requirement "in and of itself" does not conflict with the NLRA. A complete

---

[9] The Third Circuit in *Hotel & Rest. Emps. & Bartenders Int'l Union Loc. 54 v. Read*, 832 F.2d 263, 266 (3d Cir. 1987) relied on *Hill* for this same proposition.

[10] The Supreme Court in *Brown* affirmed the soundness of this principle: "As in *Hill* . . . , a sanction for noncompliance with an otherwise valid state regulation must, for pre-emption purposes, be assessed independently in terms of its potential conflict with the federal enactment." *Brown*, 468 U.S. at 510.

analysis requires consideration of the impact that any penalty for noncompliance may have on the ability of the Union to function as a union.[11]

Here, Plaintiff specifically alleges in its Complaint that Defendant VICCC is interpreting and applying the registration requirement in a manner that impedes the Union from functioning as a labor union by ordering it to "cease and desist from any union activities at the Divi Carina Bay Resort." (Dkt. No. 1 at ¶ 36). Additionally, the Complaint alleges that the threat of penalties has prevented the Union and Divi Carina from engaging in bargaining while the Union remains unregistered. *Id.* at ¶ 47. According to the Complaint, Defendant VICCC is not simply enforcing criteria for the Union's officials—or a registration requirement "in and of itself"—but instead, penalizing noncompliance by preventing the Union from functioning as the employee's collective bargaining representative in violation of the NLRA. *See Brown*, 468 U.S. at 511.[12]

---

[11] Defendant VICCC relies on cases that deal with the regulation of specific union officials and other reporting requirements, without any findings that the operation of the unions themselves were being impaired by state regulation. *See United States v. Local 560 (I.B.T.)*, 974 F.2d 315 (3d Cir. 1992) (upholding injunction against union official with links to organized crime from participating in union affairs); *Hotel Emps. & Rest. Emps. Int'l Union v. Nev. Gaming Comm'n*, 984 F.2d 1507, 1517 (9th Cir. 1993) (stating that in implementing a statutory system to govern individuals involved in the gaming industry "[t]he application of the regulations, of course, cannot place an unreasonable burden on collective bargaining representatives, or one that is unrelated to the basic objective of eliminating racketeering."). These cases do not, therefore, address the gravamen of the issue here.

[12] The Court also notes that after *Brown* was decided, Congress enacted 29 U.S.C. § 524a—cited by Defendant VICCC (Dkt. No. 21 at 18)—which provides that:

> Notwithstanding this or any other Act regulating labor-management relations, each State shall have the authority to enact and enforce, as part of a comprehensive statutory system to eliminate the threat of pervasive racketeering activity in an industry that is, or over time has been, affected by such activity, a provision of law that applies equally to employers, employees, and collective bargaining representatives, which provision of law governs service in any position in a local labor organization which acts or seeks to act in that State as a collective bargaining representative pursuant to the National Labor Relations Act, in the industry that is subject to that program.

In view of the foregoing, the Court rejects Defendant VICCC's contention that Plaintiff has failed to state a claim. Accordingly, the Court will deny Defendant VICCC's Motion to Dismiss to the extent it requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6).

## 2. Defendant GVI

Defendant GVI, who joins in Defendant VICCC's arguments, makes the separate argument that the Complaint against Defendant GVI should be dismissed because "the Complaint is devoid of any specific action taken by the Government or [Division of Gaming Enforcement] which would sanction [] judicial relief, declaratory or otherwise." (Dkt. No. 8 at 3). On the other hand, Plaintiff argues that the inclusion of Defendant GVI is proper because:

> [T]he Casino Act vests powers in both the GVI (through another agency, the Division of Gaming Enforcement (DGE)), and the VICCC to jointly administer, interpret, and enforce that law. . . . As a result of these joint powers, as well as the exclusive criminal enforcement power of the GVI, the Board cannot obtain complete relief without GVI as a party.

(Dkt. No. 18 at 2).

The Court does not agree with Defendant GVI that the Complaint does not request any specific relief from, or allege a plausible claim for relief against, the Government. Defendant VICCC was created as an executive agency of Defendant GVI. 32 V.I.C. § 404. Additionally, the Division of Gaming Enforcement was established within the Virgin Islands Department of Justice and under the direction and supervision of the Attorney General. 32 V.I.C. § 409.[13] Importantly,

---

However, the issue before the Court is not whether states have authority—generally speaking—to regulate union officials pursuant to the legitimate goal of combatting organized crime. Rather, the issue before the Court is how the Casino Act here is being interpreted and applied by Defendants, and whether it is improperly interfering with the federal rights established under the NLRA. The Court cannot dismiss Plaintiff's claims for failure to state a claim simply because some state laws regulating union officials or imposing reporting requirements may, "in and of themselves" or as applied, be valid.

[13] The Complaint specifically alleges that: "The Government of the Virgin Islands is a territorial government authorized by Congress in the Organic Act and, by its Department of Justice, Division

the Division of Gaming Enforcement is tasked with prosecuting criminal violations of the Casino Act. 32 V.I.C. § 429. Therefore, Defendant VICCC as well as the Division of Gaming Enforcement are responsible for administering the Casino Act.[14]

The essence of Plaintiff's claim is that Defendant VICCC's interpretation of the Casino Act and the threatened enforcement of the Casino Act conflict with the objectives and purposes of the NLRA in preventing the Union from functioning and interfering with Plaintiff's statutory authority. The threatened enforcement provisions include civil and criminal penalties which the Division of Gaming Enforcement is charged with pursuing. (*See, e.g.*, Dkt. No. 1-5 at 5-7). Thus, the GVI is an appropriate party in this action in order for Plaintiff to obtain complete relief.

Defendant GVI has not denied that it—through its various agencies, including the Division of Gaming Enforcement—is responsible for the enforcement of the Casino Act. Nor has Defendant GVI otherwise responded to Plaintiff's argument—with which the Court agrees—that the Government is a proper party in this action for complete declaratory relief regarding the enforcement of the Casino Act. The Court will therefore deny Defendant GVI's Motion to Dismiss the Complaint.

---

of Gaming Enforcement, is responsible for administrative, civil, and criminal enforcement of the Casino Act. *See* 32 V.I.C. §§ 409, 428-29." (Dkt. No. 1 at ¶ 6).

[14] The role that the Division of Gaming Enforcement has in the enforcement of the Casino Act was also noted by Defendant VICCC in its Motion to Dismiss. (Dkt. No. 6 at 19 ("The Legislature established the Division of Gaming Enforcement within the Virgin Islands Department of Justice specifically to investigate and prosecute violations of the Act to include non-compliance with the registration requirement. *See*[] 32 V.I.C. §§ 409 and 415(g). The VICCC is authorized to refer individuals or labor organizations to the DGE, who would then be permitted to file a criminal complaint against the non-compliant individual or labor organization.")).

## IV.   CONCLUSION

For the reasons stated above, the Court will grant Defendant VICCC's Motion to Dismiss as to the issue of Defendant VICCC's order directing the Union to withdraw its NLRB charge on grounds of mootness, but otherwise deny the Motion to Dismiss. Additionally, the Court will deny Defendant GVI's Motion to Dismiss.

An appropriate Order accompanies this Memorandum Opinion.

Date:  October 27, 2021                          _____/s/_____
                                                                WILMA A. LEWIS
                                                                District Judge